OPINION OF THE COURT
William L. Ford, J.
By notice of petition and petition, both duly served upon Michael A. Mazzone (Mazzone), Suzanne R. Arnold (Arnold) and R. Curtis Funston, Jr. (Funston, Jr.), as executors of the last will and testament of R. Curtis Funston, Sr. (Funston, Sr.) and upon the State Bank of Albany (State Bank) and upon R. Curtis Funston, Jr., individually (Funston, Jr., individually), petitioners have commenced a special proceeding under CPLR 5225 seeking a judgment (1) directing State Bank to pay to the petitioners any and all sums of money in its possession which are held for the account of the judgment debtor, Funston, Jr., individually, up to the sum of the unpaid balance of petitioners’ judgments, including interest thereon, and (2) directing Mazzone, Arnold and Funston, Jr., as executors of the estate of Funston, Sr., to pay to petitioners all sums of money held by them in which Funston, Jr., individually, has an interest, up to the sum of the unpaid balance of petitioners’ judgments, including interest thereon; and further directing respondents Mazzone, Arnold and Funston, Jr., as executors of the last will and testament of Funston, Sr., to deliver to the Sheriff of the County of Saratoga sufficient additional personal property in which said judgment debtor, Funston, Jr., individually, has an interest to satisfy the afore-mentioned judgments, including interest thereon, Sheriff’s fees and all other costs of sale of said property.
Petitioners further request an award of attorneys’ fees and costs and disbursements of this proceeding.
With the consent of all parties and their attorneys, State Bank paid over to petitioners’ attorneys the moneys in its bank belonging to Funston, Jr., individually, so that aspect of this proceeding is now moot.
The last will and testament of Funston, Sr., was filed in the Surrogate’s Court of Saratoga County on April 22, 1975 and respondents Mazzone, Arnold and Funston, Jr., are named as executors of said last will and testament. Under the terms of said last will and testament, after a specific bequest, Suzanne *467 Arnold and R. Curtís Funston, Jr., individually, are named as residuary legatees, in equal shares.
Petitioners allege that a single judgment was entered in the office of the Albany County Clerk on November 20, 1975 in their favor against Funston, Jr., individually, in the sum of $30,282.03, of which sum $22,894.44 with interest remains unpaid. Petitioners further allege that said judgment was also entered in the office of the Saratoga County Clerk on or about November 25, 1975.
However, the records of the office of the Saratoga County Clerk, of which this court takes judicial notice, show that a transcript of a judgment in favor of Donald C. Streever and Doris T. Streever against Funston, Jr., individually, in the amount of $15,258.68 was filed and indexed on November 25, 1975. A similar transcript of another judgment in the amount of $15,023.35 was filed and indexed against him on the same date in favor of Edgar Batzell and Elsie Batzell.
Petitioners now seek to enforce their judgments against the executors of the estate of Funston, Sr., to the extent of the moneys and personal property held by such executors which may eventually go to Funston, Jr., individually, as a residuary legatee of said estate.
Respondent Mazzone, one of the executors, was examined by petitioners, pursuant to CPLR 5224, and he testified that the executors are in possession of certain assets of the estate, including checking account funds of $5,277.23 and various stocks listed in Schedule B of the estate tax return valued at $70,837.95 at date of death.
Petitioners are really moving under CPLR 5225 (subd [b]) because they have commenced a special proceeding in this court.
Respondents Mazzone and Arnold contend that the Surrogate’s Court has exclusive jurisdiction of the issues here involved which requires a determination by it of the judgment debtor’s entitlement to the property and the respective rights of the judgment creditors and other beneficiary in the judgment debtor’s interest in the estate.
There is no merit to such a contention. The respondent Funston, Jr., individually, is the judgment debtor, not the Funston, Sr., estate. CPLR 5201 (subd [b]) provides: "Property against which a money judgment may be enforced. A money judgment may be enforced against any property which could *468 be assigned or transferred, whether it consists of a present or future right or interest and whether or not it is vested, unless it is exempt from application to the satisfaction of the judgment. A money judgment entered upon a joint liability of two or more persons may be enforced against individual property of those persons summoned and joint property of such persons with any other persons against whom the judgment is entered.”
CPLR 5201 (subd [c], par 2) provides: "Where property consists of a right or interest to or in a decedent’s estate or any other property or fund held or controlled by a fiduciary, the executor or trustee under the will, administrator or other fiduciary shall be the garnishee.”
In Matter of Chalaire (71 Misc 2d 496) the Surrogate, in denying an application by a judgment creditor for permission to issue execution against the estate on a judgment recovered in Supreme Court, Suffolk County, against one Robert Chalaire, who was a legatee under his father’s will, wrote (pp 496-497):
"The application here is directed against the executors of the father’s estate, who show that they have segregated and placed in a separate account the full amount of the legacy ($10,000) because the Supreme Court, Nassau County * * * ordered, adjudged and decreed that the respondent executors be, and were directed to pay said sum to this petitioner pursuant to CPLR 5225 and 5227. * * *
"The remarks of Professor David D. Siegel in his 1969 Supplementary Practice Commentary to SCPA 605 (McKinney’s Cons. Laws of N. Y., Book 58A, SCPA, Cum. Ann. Pocket Part, 1969-1970, p. 28) treat directly with the situation here involved, citing the decision of this court in Matter of McClure (59 Misc 2d 111). Under the circumstances here, the court holds that there is no necessity for the judgment creditor to apply to this court for leave to issue execution against the estate, for the reason that the subject matter of this application does not arise out of a debt or judgment against the estate itself which might, of course, involve priorities among creditors of the estate. The legacy in this case is due and payable to the legatee and the executors have shown that they have already set aside the sum necessary to pay the same as they were specifically directed by the Supreme Court. If any priorities were or are involved, they would concern creditors not of the estate but of the legatee.”
*469 Respondent executors further argue that the judgment debtor, as a residuary legatee, may not claim any distributive rights from the estate until he has satisfied all of his fiduciary obligations, including the possibility of a surcharge, and, therefore, the judgment creditors have no greater right than the judgment debtor has to his residuary interest.
They also argue that the petition is premature because the estate is subject to claims and such claims will not be determined until there is an accounting and judicial settlement of the estate.
In the brief filed for petitioners, they agree "that a judgment in their favor in this proceeding should specify that the payment to petitioners should not be made prior to the final accounting and judicial settlement of the estate.”
Obviously, until such time as the Surrogate’s Court determines all issues raised in the administration of the estate of Funston, Sr., and a final settlement is reached, no one can say what amount of money and property may accrue to Funston, Jr., individually, as his one-half share of the residuary estate. Because this is so, the arguments of the respondents lack any substance. Should any charges be brought against Funston, Jr., for alleged breach of his fiduciary duties, such charges would have to be disposed of by the Surrogate before the estate could be judicially settled and distribution of the residuary estate be made. Claims against the estate, if any, also would have to be decided by the Surrogate.
For the same reasons, the argument of petitioners that where the answer of the respondents contains no more than general denials and conclusory allegations of affirmative defenses, unsupported by evidentiary proof in the form of affidavits or documents, summary judgment must be granted against respondents, must fail. Petitioners are, in effect, requesting this court to determine matters which may only be disposed of by the Surrogate.
The more troublesome question before this court is not specifically raised, though it can be said to be encompassed within the arguments made by the respondents. That is, must the judgment debtor’s interest in the estate be definite to the point where all that remains is for the executors to make payment of the amount due to the judgment debtor before a judgment may issue pursuant to CPLR 5225? Stated another way, may this court issue a judgment so worded that it will not take effect until such time as it has been judicially *470 determined by the Surrogate how much moneys and personal property the judgment debtor is entitled to as his one-half share of the residuary estate?
Professor David D. Siegel, in his 1969 Supplementary Practice Commentary to SCPA 605 (McKinney’s Cons Laws of NY, Book 58A, SCPA 605, Cum Ann Pocket Part, 1978-1979, p 75), in discussing a situation where a judgment creditor, holding a Supreme Court judgment which he is attempting to enforce by levying against the judgment debtor’s interest in an estate, comments: "Let us assume that D’s interest in that estate is not indefinite and contingent, but has achieved the status of certainty and it remains only for the fiduciary to make payment of it to D. (By so assuming we get past the barrier of CPLR 5201[a], which puts contingent and uncertain debts beyond levy of execution.)”
This comment would seem to indicate that a CPLR 5225 (subd [b]) judgment cannot be enforced against the residuary interest of Funston, Jr., individually, in his father’s estate because such interest is contingent and uncertain.
However, in ABKCO Ind. v Apple Films (39 NY2d 670 [1976]), the court upheld an attachment by a judgment creditor of a property right under a licensing agreement which, at the time of the attachment, was subject to certain contingencies. In fact, at the time of the attachment, the attached property was not only subject to certain contingencies but it may have had no value at that time. The court stated (pp 675-676): "Since we classify the subject of this attachment as property it is irrelevant that, had a balance been struck at the moment the attachment was effected, it would have disclosed that LTD was indebted to INC rather than that INC was indebted to LTD. We know of no threshold requirement that the attaching creditor show the value of the attached property or indeed that it has any value. Correlatively we know of no theory on which the debtor or the garnishee is entitled to a vacatur of the attachment if it can be established that the property in question is valueless. While the fact of value or lack of it has no legal effect on the validity of the attachment, it obviously will have real economic significance. Even that aspect, however, may not come into sharp focus until the execution on the judgment, if any, in the action for which the attachment provides jurisdiction.”
Professor Siegel comments about the effect of ABKCO Ind. v Apple Films (39 NY2d 670, supra; McKinney’s Cons Laws of *471 NY, Book 7B, CPLR 5201.5, pp 53-57) as circumventing the debt restriction in CPLR 5201 (subd [a]) by treating the asset as property under CPLR 5201 (subd [b]). He states (p 54):
"All of this changed with Abkco Industries, Inc. v. Apple Films, Inc., 39 N.Y.2d 670, 385 N.Y.S.2d 511, 350 N.E.2d 899, handed down by the Court of Appeals in 1976. Avoiding arbitrary distinctions, Abkco takes a pragmatic approach that gives the economic potential of the asset the upper hand. If from the judgment creditor’s point of view the asset is worth pursuing as a matter of economics, Abkco authorizes the pursuit notwithstanding the contingent nature of the asset, and even though nothing may come of the chase.
"Abkco does this by giving the judgment creditor the option of treating the asset as a 'debt’ under subdivision (a) or as 'property’ under subdivision (b). Since under subdivision (a) the contingent nature of the 'debt’ would make it unleviable, the judgment creditor need only opt to treat the asset as 'property’, which then entitles him to pursue it under subdivision (b) regardless of its contingent nature. 'Property’ under subdivision (b) does not confront the contingency limitations built into subdivision (a).”
After further discussing the contingency problem, Professor Siegel writes (p 55): "It may take some case law to iron out these mechanical questions. If the judgment creditor is a bit hesitant to rely on the execution in view of the restriction spelled out by CPLR 5232(a), perhaps he would do better to rely on something like a payment proceeding under CPLR 5225 or 5227. An overly technical application of the language of some of the enforcement devices can frustrate the capture of the intangible obligation, but such a technical application is no more appropriate to make of the devices than was made by the Court of Appeals of the 'debt’ and 'property’ statute, CPLR 5201, in the Abkco case.”
The judgment debtor is a residuary legatee of his father’s estate along with his sister. He may or may not eventually obtain money or personal property, or both, from his father’s estate. There is an uncertainty or a contingency. Why should such uncertainty or contingency prevent petitioners from obtaining a judgment at this time directing, in effect, that any moneys or personal property payable at the time of the final accounting to the judgment debtor from his father’s estate be paid to the petitioners rather than the judgment debtor? This court is of the opinion that such relief should be granted, *472 although it is unable to find any direct authority dealing with a contingent and uncertain interest such as is presented here. In Matter of Chalaire (71 Misc 2d 496, supra) no question of uncertainty or contingency existed, for the executors had placed the full amount of the legacy sought to be levied against in a separate account.
The court finds that petitioners are entitled to two separate judgments directing the respondents, as executors of the last will and testament of R. Curtis Funston, Sr., to pay to petitioners all sums of money which it may finally be determined that R. Curtis Funston, Jr., is entitled to receive as a residuary legatee of the estate of R. Curtis Funston, Sr., up to the sum of the unpaid balance of petitioners’ separate judgments, including interest thereon, and further directing respondents, should such moneys not be sufficient to satisfy petitioners’ separate judgments, with interest thereon, to deliver to the Sheriff of Saratoga County any additional personal property which it is finally determined that R. Curtis Funston, Jr., has a right to receive as a residuary legatee in the estate of R. Curtis Funston, Sr., sufficient to satisfy the separate unpaid balance of the judgments of the petitioners, with interest thereon, Sheriff’s fees and all other costs involved in any sale of such property. A transcript of each judgment should be filed with the Clerk of the Surrogate’s Court of Saratoga County.
In view of the paucity of case law pertaining to this special proceeding, the court, while awarding petitioners their costs and disbursements, declines to award them counsel fees.
Let judgments be entered accordingly.